Karen **WARDWELL, Individually and as Mother and Next Friend of Misty Wardwell and Stormy Wardwell, and**

Pauline **Carter, as Mother and Next Friend of Amy Carter and Adam Carter, Plaintiffs,**

v.

**UNITED STATES of America, Defendant and Third Party Plaintiff,**

v.

Anthony **ARTHUR, Third Party Defendant.**

No. 90–0085–B.

United States District Court, D. Maine.

May 8, 1991.

See also 758 F.Supp. 769.

Bernard J. Kubetz, Eaton, Peabody, Bradford & Veague, Bangor, Me., for plaintiffs.

Nancy Torresen, Asst. U.S. Atty., Bangor, Me., for USA.

Stephen C. Whiting, Martica S. Douglas, Hewes, Douglas, Whiting & Quinn, Portland, Me., for Anthony Arthur.

Brett D. Baber, Rudman & Winchell, Bangor, Me., limited to defense of counterclaim by USA against Karen Wardwell.

## OPINION AND ORDER

GENE CARTER, Chief Judge.

This matter comes before the Court for factfinding and final resolution of claims by Plaintiffs Karen Wardwell, on behalf of herself and as next friend to her minor children Stormy and Misty Wardwell, and Pauline Carter, as next friend to her minor children Adam and Amy Carter, arising out of an automobile accident on July 13, 1988. Plaintiffs' claims, which were tried before the Court without a jury on March 11 and 12, 1991, are brought under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*

### I. FINDINGS OF FACT ON NEGLIGENCE

■ The Federal Tort Claims Act (hereinafter Act) provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. As a result, Plaintiffs bear the burden of establishing the liability of the United States by showing that a private individual would be liable under state law—Maine law, in this case—for similar conduct in the same circumstances. *Platts v. United States,* 658 F.Supp. 850, 853 (D.Me.1987) (Carter, J.) (citing *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963).

■ The respective liabilities of the parties herein were largely resolved by the pleadings, pretrial settlement,[1] and stipulations at trial. No counterclaims or cross-claims were made asserting that Karen Wardwell or the children were responsible for any act or omission which proximately caused the accident. Defendant United States has counterclaimed against Karen Wardwell for contribution and indemnity asserting that her failure to require the use of seatbelts by the minor children who were passengers in her van constituted negligence proximately causing the injuries to the children.[2]

Third Party Defendant Anthony Arthur brought no claims against Defendant United States. Defendant United States dismissed its cross-claims for indemnity and contribution against Anthony Arthur at trial, and entered into an agreement with Plaintiffs which resulted in three stipulations: (1) Anthony Arthur was causally negligent;[3] (2) Anthony Arthur settled Plaintiffs' claims against him as follows: Karen Wardwell—$50,000.00, Misty Wardwell—$6,166.50, Stormy Wardwell—$3,083.33, Adam Carter—$3,083.33, Amy Carter—$6,166.50; and (3) the amount of any individual verdict which may be rendered against Defendant will be reduced by the amount of each Plaintiff's settlement with Arthur, as provided by 14 M.R.S.A. section 163.[4] Thus, only two sets of liabili-

---

1. Plaintiffs settled their claims against Anthony Arthur before trial, and received the following sums in return for their voluntary dismissal of those claims: Karen Wardwell—$50,000.00, Misty Wardwell—$6,166.50, Stormy Wardwell—$3,083.33, Adam Carter—$3,083.33, Amy Carter—$6,166.50.

2. Defendant United States' counterclaim does not include any assertion that the failure to wear seat belts proximately caused this accident.

3. Because Anthony Arthur was not a party to this stipulation, and had been dismissed from the case prior to the entry of the stipulation, the parties understood that the Court's acceptance

of this mutually agreeable finding of fact would not have any preclusive effect should Defendant seek contribution from Arthur in the future.

4. The Maine Law Court's unwillingness in *Lavoie v. Celotex Corp.,* 505 A.2d 481 (Me.1986), to accept this Court's interpretation of the Maine statutes governing comparative negligence, *see* 14 M.R.S.A. §§ 156 and 163, in *Stacey v. Bangor Punta Corp.,* 108 F.R.D. 72 (D.Me.1985), does not affect the validity of this agreement between the parties. *Lavoie* and *Stacey* involved the question of the effectiveness of *Pierringer* agreements between plaintiffs and defendants which purport to dismiss third parties' claims or cross-claims for contribution from the defendants without the third parties' consent.

ty issues must be decided. First, whether Jack Neelley, an agent of Defendant United States, was negligent, and whether Neelley's alleged negligence proximately caused the accident. Second, whether Karen Wardwell was negligent in not requiring the four children in her motor vehicle to wear seat belts, and whether Wardwell's alleged negligence proximately caused the children's injuries.

The parties do not dispute most of the facts surrounding the automobile accident. Karen Wardwell was driving a van east on Route 1 toward the intersection of Route 1 and Upper Falls Road in Orland, Maine.[5] The van was in the left lane of the two lanes heading east. Stormy Wardwell and Amy Carter were seated together in the front bucket seat of the van. Misty Wardwell and Adam Carter were riding in the back seat. None of the passengers were wearing the seat belts with which the van was equipped. A forty-five-miles-per-hour speed limit was in effect in both directions on this stretch of Route 1.

Jack Neelley, a meat and produce specialist for the Department of Navy, was driving west on Route 1 in a station wagon owned by the Defendant United States.[6] Neelley was travelling behind a van which was pulling a pop-up camper. Anthony Arthur was behind Neelley in his Mitsubishi Cordia, and John Fox was behind Arthur. Westbound Route 1 changes from a one-lane road to a two-lane road as it climbs a long, slow incline approaching the intersection with Upper Falls Road. The van and camper, Neelley, Arthur, and Fox were all in the interior, or left, westbound lane after Route 1 expanded to two westbound lanes.

The events leading to the accident began when Neelley moved to enter the right westbound lane. Before he was able to enter that lane, Neelley was forced to swerve back into the left lane to avoid hitting Arthur's car, which was attempting to pass Neelley and the van and camper on the right. Arthur also swerved, driving onto the gravel-covered shoulder to avoid a collision with Neelley's car. Arthur's car went out of control, "fishtailed" on the shoulder, and eventually shot across both westbound lanes and collided with the camper. The camper "exploded"[7] off the back of the van and was propelled into the eastbound lanes where it smashed into the van driven by Karen Wardwell. All of the occupants of the Wardwell van were injured as a result of the accident.

Both Anthony Arthur and John Fox testified that they had been following Neelley for some time on Route 1 before they reached the approach to Upper Falls Road. Neelley did not remember having seen Arthur's car, even though he testified that he had checked his mirrors, signalled, and looked over his shoulder before he attempted to enter the right lane. He admitted having seen "a shadow," but not a car, in

The present agreement is quite different. Third Party Defendant Arthur had neither cross-claims against the Defendant United States nor counterclaims against Plaintiffs at the time of the making of this agreement. Defendant's voluntary dismissal of its cross-claims against Arthur effectively dismissed Arthur from the case. As a result, the agreement has no effect on Arthur's rights and Arthur's consent to the agreement is unnecessary. *See also supra* note 2 (agreement has no preclusive effect on Arthur). The agreement merely establishes the necessary predicate for the election by Defendant of the right of setoff established by 14 M.R.S.A. section 163.

5. Some confusion was injected into this case at trial by counsels' and witnesses' efforts to label the directions in which the relevant automobiles were travelling. Route 1 generally runs north and south. However, the portion of Route 1 at issue in this case runs east and west. For the purposes of this opinion, the Court will identify the directions in which the cars were travelling to be either east or west on Route 1.

6. It was stipulated at trial that Neelley was driving this vehicle within the course and scope of his employment with Defendant.

7. While "exploded" was the term employed by many of the witnesses to the accident to describe the effect caused by Arthur's car colliding with the van and camper, the Court finds no evidence in the record to support the conclusion that an actual explosion, such as might be caused by escaping propane fumes, occurred as a result of that collision. Rather, the evidence supports a conclusion that this collapsible camper popped up and was propelled off the back of the van and collided with the Wardwell vehicle.

the right lane. His rear view was unobstructed for more than four or five car lengths, but it was not until the last minute that he realized that the "shadow" was, in fact, Arthur's car. Neelley admitted that he had no explanation for his failure to see Arthur's car.

Both Arthur and Fox testified that Arthur's car was in the right lane and advancing on Neelley's car before Neelley moved to enter the right lane. Neelley's car was only one-third of a car length ahead of Arthur's when Neelley attempted to change lanes. The Court finds that Arthur was, in fact, in the right lane and available to be seen by Neelley before he attempted to enter the right lane. One of Maine's "rules of the road" is that drivers are legally bound to see that which is open and apparent. *See Lyman v. Bourque,* 374 A.2d 588, 589 (Me.1977). Arthur's car was openly and apparently positioned in the right lane, and Neelley should have seen it. As a result, Neelley's failure to see Arthur's car, and his subsequent lane change, constituted negligence. On the other hand, the Court finds that the danger presented by Neelley's car could not have become apparent *to Arthur* until Neelley had already begun to encroach on the right lane. Arthur saw the danger as soon as it was available to be seen and acted reasonably to avoid the danger.

In addition, the Court finds that Neelley's negligence proximately caused the events which ultimately resulted in the accident involving the Wardwell van. As a direct and necessary consequence of Neelley's failure to see Arthur and Neelley's attempt to enter the right lane, Arthur was forced to swerve onto the gravel shoulder. Arthur's necessary reaction, combined with the gravel surface on the shoulder, caused Arthur to lose control of his car and collide with the camper. In turn, that collision caused the camper to slam into the Wardwell van. Neelley's negligence was the "but for" cause of each of these events; that is, Neelley's negligence was a proxi-

mate, necessary, and efficient cause of the events.

Defendant argues that Arthur's negligence, which allegedly consisted of driving at an excessive speed, was an independent and efficient cause of the accident, thereby superseding Neelley's negligence and vitiating Defendant's liability. *See generally Johnson v. Dubois,* 256 A.2d 733, 734 (Me. 1969). There was conflicting testimony as to Arthur's speed. Gerald Kuhn, the driver of the van which was pulling the camper, testified that he was travelling between fifty and fifty-five miles per hour at the time of the accident. However, Kuhn also admitted that he did not see the accident because he was positioned in front of Neelley's car. Kuhn could not have had an accurate sense of the timing of the relevant events. Neelley also testified that he was travelling at approximately fifty or fifty-five miles per hour; however, Neelley's testimony was generally not credible and consisted of little more than a string of self-serving statements.

Both Arthur and Fox[8] testified that they were travelling at a speed between forty and forty-five miles per hour. Maine law defines drivers' duty as follows:

> Any person driving a vehicle on a way or in any other place shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the way or place, and of any other conditions then existing.

29 M.R.S.A. § 1252(1). *See also Olsen v. French,* 456 A.2d 869, 877 (Me.1983) ("[t]he statute articulates the all-inclusive duty owed at common law by motorists on our public ways"). The Court finds that, even inferring from the facts evinced at trial that Arthur increased his speed in order to pass Neelley, there is an insufficient basis in the record for concluding either that Arthur was exceeding the posted speed limit or violating the duty to maintain a careful and prudent speed consistent with the prevailing driving conditions. Thus, Ar-

---

**8.** The Court finds that John Fox's testimony deserves special attention, as he was the only witness who was both in a proper position to observe the relevant events and totally disinterested in the outcome of this litigation.

thur's speed did not constitute negligence and could not have been an independent, intervening proximate cause of the accident with the Wardwell van. Any negligence in Arthur's reaction to Neelley's negligent driving was merely cumulative, and not an intervening cause of the accident.

Accordingly, the Court hereby *FINDS* that Jack Neelley was negligent and that his negligence was the proximate cause of the accident on July 13, 1988 which caused injury to the occupants of the van driven by Karen Wardwell.

## II. FINDINGS OF FACT ON DAMAGES

■ The Act expressly limits the amount of recovery available in court to the amount sought in the administrative claims process which must be exhausted before the commencement of litigation. 28 U.S.C. § 2675(a) and (b). The only statutory exception to this damage limitation provision, which is available at the Court's discretion, is additional damages "based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency...." 28 U.S.C. § 2675(b).

Plaintiffs unsuccessfully asserted administrative claims for the following amounts: Karen Wardwell—$250,000, Stormy Wardwell—$20,000, Misty Wardwell—$40,000, Adam Carter—$20,000, Amy Carter—$40,000. Plaintiff Karen Wardwell asserts, however, that she is entitled to an increase in the amount of damages available to her because the treating orthopedic surgeon did not undertake an assessment of the permanent impairment she suffered as a result of the accident until after the filing of the administrative claim in October, 1989. The Court finds that this circumstance offers an excellent example of evidence which was reasonably discoverable; therefore, no increase in the administrative claims cap on Karen Wardwell's damages is warranted.

## A. *Karen Wardwell*

■ The head-on collision with the camper threw Karen Wardwell, who was a healthy, thirty-one-year-old woman at the time, to the floor of the van and trapped her right leg beneath her. She was immediately rushed to the emergency room at Eastern Maine Medical Center. Although she suffered only minor cuts and bruises to her back and ribs from the impact and the resulting shower of broken glass, her right knee was sufficiently damaged to require surgical removal of her knee cap (a patellectomy) and associated pieces of her fractured femur bone. Her quadriceps tendon was also torn. The surgery occurred on the same day as the accident and required three days of hospitalization, a full-length leg cast, and the use of crutches. Karen Wardwell entered into a physical therapy program three weeks after the accident which involved painful involuntary bending of the injured knee, both manually and by machine, three days each week. The therapy was unsuccessful in returning Karen Wardwell's knee to its full range of motion.

Karen Wardwell underwent a second inpatient procedure on October 25, 1988 consisting of bending her leg while she was under anesthesia to break the adhesions in her right leg produced by the removal of her knee cap. This nonsurgical procedure required a hospital stay that lasted eight days and the immobilization of her leg for most of that period. Therapy continued for several months thereafter to build strength in her leg. Some pain medication was necessary early on in her recovery, but non-prescription aspirin equivalents now suffice to mitigate the occasional aches she suffers.

Karen Wardwell will have some chronic discomfort in her knee, and she will not be able to participate in very vigorous athletic activities. She also has crepitus in her knee, a condition which may result in arthritis. The permanent impairment in her knee is less than nineteen percent, indicating a permanent impairment to her whole body of less than eight percent.[9] She also

---

**9.** Two medical experts offered competing analyses of Karen Wardwell's permanent impairment

as a result of the accident. Dr. Phillip Kimball, Plaintiffs' expert and the treating orthopedic

has a scar across her knee approximately three and one-half inches long.

Immediately after her release from the first hospitalization, Karen Wardwell was unable to undertake ordinary tasks such as driving, housework, and shopping. Even navigating her home was extremely difficult. She was frequently forced to crawl into her home as the only means of traversing the three steps leading to her front door with the cast on her leg. In addition, she was forced to miss almost six months of work as a Certified Nurse Assistant. These problems disappeared, however, as the strength in her leg increased. She is now able to function relatively normally. She will be able to be involved in many of the activities she enjoyed before the accident if she maintains strength in her right quadriceps through the home exercise routine prescribed by her treating orthopedic surgeon. Karen Wardwell should be able to continue her work as a Certified Nurse Assistant unimpeded.

Based on this evidence, damages in this case will consist of four elements: lost wages, medical expenses, pain and suffering, and permanent impairment. The Court finds that Karen Wardwell lost wages in the amount of $5,068.00 during the twenty-one and two-thirds weeks of her recovery from the injuries caused by the accident. She will suffer no loss of future income as a result of this accident. There is no dispute in the record that Karen Wardwell's medical expenses were $11,-662.94. The Court finds that Karen Wardwell experienced pain and suffering as a

result of this accident, including but not limited to eleven days of hospitalization, a painful medical and physical therapy program, and a variety of restraints associated with being condemned to a cast and crutches which caused pain and discomfort. The Court finds that $50,000.00 adequately compensates Karen Wardwell for her pain and suffering. Finally, the Court finds that Karen Wardwell will suffer a limited permanent impairment as a result of this accident, and further finds that $25,000.00 is adequate compensation for this impairment. Thus, Karen Wardwell's damages are $91,730.94 before taking into account the $50,000 setoff from her settlement with Anthony Arthur. Accordingly, the Court will award Karen Wardwell damages totalling $41,730.94 from Defendant United States.

### B. Amy and Adam Carter, and Stormy and Misty Wardwell

The accident threw Amy Carter into the dashboard from her perch in the front bucket seat of the van which she was sharing with her cousin Stormy Wardwell. The impact with the dashboard caused a fracture in Amy Carter's nose (specifically, the nasal spine), and a minor injury to her leg.[10] Amy Carter was taken to the emergency room of Eastern Maine Medical Center for outpatient treatment. The eventual result of the injury was a "saddling deformity" in the nose, and tenderness and swelling in the nose for a short period of time after the accident.[11] The injury to

surgeon, found a 19% impairment to the knee and an 8% whole body impairment. Dr. Lawrence Leonard, Defendant's expert, found a 10% impairment in the knee and a 4% whole body impairment. While both of these assessments were based on conversion tables provided by the American Medical Association, Dr. Kimball's greater familiarity with Karen Wardwell's condition and the actual treatment of that condition lends greater credibility to his analysis.

However, Dr. Leonard pointed out that the onset of arthritis is a possibility, but not a certainty or probability, for patients suffering crepitus. Dr. Kimball did not seriously dispute this analysis. Since Dr. Kimball's assessment was based, in part, on his determination that arthritis *will* appear in the knee, the Court finds that the estimated impairment ratings should reflect

the possibility that Karen Wardwell will not suffer arthritis. Thus, the Court finds that Dr. Kimball's assessments are generally accurate, although subject to a reduction by the factfinder bringing the actual ratings to *less* than nineteen percent and ten percent respectively.

10. The medical records do not state definitively that the nasal bone was fractured. Rather, the emergency room physician stated in his report: "Findings suspicious for a fracture involving the maxillary spine." This finding was the basis for the future assessments of the two experts whose testimony was submitted to the Court.

11. While there was some evidence introduced that the accident had also caused a widened septum which partially blocked Amy Carter's breathing, both expert doctors who examined

Amy Carter's nose now causes her insubstantial discomfort, primarily when she gets hit in the face playing sports.

■ There is no dispute that Amy Carter is entitled to the recovery of her medical bills, which amounted to $965.49. Plaintiffs also seek $7,000.00 to pay for a rhinoplasty and septoplasty to repair Amy Carter's saddling deformity and her widened septum. The Court finds that these are elective surgeries to correct common physical problems which cannot necessarily be attributed to this accident. As a result, the Court will not award future medical expenses. However, the Court finds that Amy Carter experienced pain and suffering as a consequence of the accident and her resulting physical injury. The Court further finds that $5,000.00 constitutes adequate compensation for that pain and suffering. In sum, Amy Carter is entitled to damages in the amount of $5,965.49; however, she received $6,166.50 from her settlement with Anthony Arthur which is a setoff against this award. Accordingly, Amy Carter will receive no damages from Defendant.

■ Stormy Wardwell was seated alongside Amy Carter in the front bucket seat of the van, and was thrown into the windshield by the collision with the camper. She suffered cuts and bruises to her head and her knees which were treated at the emergency room immediately after the accident on an outpatient basis. Stormy Wardwell suffers no continuing physical or emotional consequences from the accident. There is no dispute that she is entitled to recover $227.50 in medical expenses as a result of the accident. The Court also finds that Stormy Wardwell experienced pain and suffering as a result of the accident, and that $2,500.00 is adequate compensation for that pain and suffering. Stormy Wardwell's damages totalling $2,727.50 are subject to setoff in the amount of $3,083.33 from her settlement

with Anthony Arthur. Accordingly, she will receive no damages from Defendant.

Adam Carter was seated in the back seat on the driver's side of the van and was thrown around the back of the van as a result of the accident. He suffered minor injuries to his shoulder and back which examination and x-rays disclosed involved no broken bones. His soreness and numbness persisted for a few days. Again, there is no dispute that Adam Carter is entitled to recover $227.00 for his medical expenses. The Court further finds that Adam Carter experienced pain and suffering as a consequence of the accident which will be adequately compensated by an award of $1,500. Like those of his sister and cousin, Adam Carter's damages totalling $1,727.00 are subject to setoff. Since the settlement amount for Adam Carter was $3,083.33, he will receive no damages from Defendant.

Misty Wardwell was seated in the back seat on the passenger's side of the van at the time of the accident. The accident occurred on her ninth birthday. The collision with the camper caused Misty Wardwell to be thrown to the floor of the van, breaking her little toe and the bone in her foot leading to that toe. She also suffered a bump on her arm. At the emergency room, she was outfitted with a fiberglass cast running from just above her toe to her knee. She was required to wear the cast for three weeks, but now suffers no lingering ill effects from the injury and accident. Again, there is no dispute that Misty Wardwell is entitled to recover $815.30 for medical expenses. The Court also finds that Misty Wardwell experienced pain and suffering as a result of the accident, and that $5,000 is adequate compensation for that pain and suffering. Misty Wardwell's damages totalling $5,815.30 are subject to setoff in the amount of $6,166.50. Accordingly, Misty Wardwell will receive no damages from Defendant.

Amy Carter posited several different causes of the widened septum which could not be excluded from consideration. As a result, the Court finds that the record does not support the conclusion by a preponderance of the evidence that this widened septum was caused by the accident.

Defendant counterclaimed against Karen Wardwell asserting that she was under a duty to require the children to wear the seatbelts with which the van was equipped. Defendant argues that her failure to satisfy this duty constitutes negligence, and that this negligence was the proximate cause of some or all of the children's injuries in the accident. As a result, Defendant seeks contribution and indemnity from Karen Wardwell. However, the Court's findings that the children are not entitled to receive any damages from Defendant serve to moot these claims for contribution and indemnity. Simply, there is no damages award to which Karen Wardwell may contribute.[12] The Court will, therefore, dismiss Defendant's counterclaim with prejudice as moot.

Accordingly, the Court hereby *FINDS* that Defendant United States is liable to Karen Wardwell for damages in the amount of forty-one thousand seven hundred and thirty dollars and ninety-four cents ($41,730.94), and hereby *ORDERS* that judgment herein enter that Defendant United States pay said sum to Karen Wardwell. The Court further *FINDS* that Defendant United States is not liable to Amy Carter, Adam Carter, Stormy Wardwell, or Misty Wardwell for damages.

The Court hereby *ORDERS* that Defendant United States' counterclaim for contribution and indemnity against Plaintiff Karen Wardwell is *DISMISSED* as moot.

So ORDERED.

---

12. Defendant United States' counterclaim did not include any allegations that Karen Wardwell was negligent by failing to wear her seat-belt. The counterclaim addressed only Karen Wardwell's alleged negligence in failing to require that the minor children wear seatbelts.