Steven C. KENNEY, Plaintiff

v.

UNITED STATES of America, Postal Service, Defendant

No. 03–44–P–DMC.

United States District Court, D. Maine.

Jan. 14, 2003.

Christopher C. Dinan, Monaghan, Leahy, Hochadel & Libby, Portland, ME,

David J. Marchese, Portland, ME, for Steven C Kenney, Plaintiff.

David R. Collins, Office of the U.S. Attorney, Portland, ME, for U.S. Postal Service, Defendant.

## MEMORANDUM DECISION ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT[1]

COHEN, United States Magistrate Judge.

The plaintiff moves for summary judgment on the third affirmative defense raised by the defendant. Shortly after the plaintiff's motion was filed, the defendant filed its own motion for summary judgment on this issue, combining its memorandum in support of its motion with its memorandum in opposition to the plaintiff's motion. I grant the plaintiff's motion.

### I. Summary Judgment Standard

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93–94 (1st Cir.2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir.2001) (citation and internal punctuation omitted).

To the extent that parties cross-move for summary judgment, the court must draw all reasonable inferences against granting summary judgment to determine whether there are genuine issues of material fact to be tried. *Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.*, 972 F.2d 426, 429 (1st Cir.1992). If there are any genuine issues of material fact, both motions must be denied as to the affected issue or issues of law; if not, one party is entitled to judgment as a matter of law. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720, at 336–37 (1998).

---

1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge David M. Cohen conduct all proceedings in this case, including trial, and to order the entry of judgment.

## II. Factual Background

The following undisputed material facts are appropriately presented in the parties' statements of material facts submitted pursuant to this court's Local Rule 56. On May 25, 2002 a United States Postal Service employee caused injury to the plaintiff while backing up a vehicle at the AutoMart near Riverside Street in Portland, Maine. Plaintiff's Statement of Material Facts, etc. ("Plaintiff's SMF") (Docket No. 9) ¶ 1; Defendant's Response to Plaintiff's Statement of Material Facts, etc. ("Defendant's Responsive SMF") (Docket No. 12) ¶ 1.

The first time the plaintiff received medical treatment for the injuries he received in the accident was when he was seen at the emergency room at Brighton First Care on May 28, 2002. *Id.* ¶ 2. X-rays of the plaintiff's right elbow and forearm taken that day were negative as to fracture or dislocation. *Id.* ¶ 3. The plaintiff was seen by his primary physician, Dr. Crute, on June 5, 2002 for complaints of pain in his right arm and shoulder. *Id.* ¶ 4. On that date Dr. Crute opined that the plaintiff had sustained a contusion of the right upper extremity as a result of being hit by the Postal Service vehicle on May 25, 2002. *Id.* ¶ 5. Dr. Crute's note concerning this visit states, in part, that the plaintiff "tells me that he had a lot of swelling and ecchymosis, particularly around the right elbow. The swelling has gone down considerably, but he is still having pain in the arm and into his shoulder and would like some help with that." Statement of Additional Facts ("Defendant's SMF") (included in Defendant's Responsive SMF beginning at 2) ¶ 16; Plaintiff's Response to Defendant's Statement of Additional Facts ("Plaintiff's

Responsive SMF") (Docket No. 14) ¶ 16. Dr. Crute prescribed pain medication for the plaintiff on June 7, 2002. Plaintiff's SMF ¶ 6; Defendant's Responsive SMF ¶ 6.

By letter dated June 20, 2002 the Postal Service requested that the plaintiff file a notice of claim to comply with the Federal Tort Claims Act ("FTCA"). *Id.* ¶ 7. The form asked the plaintiff to state a claim for the amount he was seeking for his injuries. *Id.* ¶ 8. The plaintiff, who was not then represented by an attorney, completed the form, asking for $7,500 for pain and suffering and $2,000 for estimated medical bills, and signed it on June 21, 2002. *Id.* At that time, the plaintiff had been seen once in the emergency room and once by his primary care physician and had been told that he had sustained a contusion but no dislocation or fracture. *Id.* ¶ 9. He stated on the claim form, in part: "Realizing that I could have pain due to this injury in the future I could develop arthritis or tendinitis in these areas, still have severe pain in shoulder (and) elbow with doctor's bills and work missed. I feel this is for pain and suffering damages." Defendant's SMF ¶ 24; Plaintiff's Responsive SMF ¶ 24.

On June 24, 2002 Dr. Crute wrote, in part, that the plaintiff was seen in the emergency room on May 28, 2002 [2] "where he was found to have swelling and ecchymoses around the elbow, but no fractures. He is still having discomfort in his right upper extremity, and beginning physical therapy on June 17th." *Id.* ¶ 17. On or about June 25, 2002 the plaintiff wrote on a receipt sent to the defendant: "[E]ven at six months therapy once a week with the appointments and co pay totaling nearly

2. Paragraph 17 of the defendant's statement of material facts actually gives this date as May 25, 2002. This is inconsistent with the date of May 28, 2002 for the plaintiff's emergency room visit to which the parties also agreed. Plaintiff's SMF ¶ 2; Defendant's Responsive SMF ¶ 2. I conclude that May 28, 2002 is more likely the correct date.

2,800 (and) regular doctor (and) emergency physician I don't want to get behind on Hospital Bills for my credit is very important as my injury due to the postal worker missed work will cost at $200.00 per day (and) visits . . . ." *Id.* ¶ 18. On June 7, July 15, August 7 and August 30, 2002 the plaintiff complained about pain in his arm and shoulder and was prescribed various pain medications. *Id.* ¶ 19. On August 30, Dr. Crute noted that he would have the plaintiff obtain an MRI and see an orthopedist. *Id.*

On September 25, 2002 an MRI was performed on the plaintiff's right shoulder. *Id.* ¶ 20; Plaintiff's SMF ¶ 11; Defendant's Responsive SMF ¶ 11. The MRI revealed a partial tear. *Id.* On October 17, 2002 the plaintiff was examined by Dr. Thomas Murray for evaluation of his right shoulder pain. Defendant's SMF ¶ 21; Plaintiff's Responsive SMF ¶ 21. Dr. Murray noted that an "MRI has been ordered and the question of a partial thickness rotator cuff tendon tear has been raised." *Id.* In July 2003 the plaintiff's shoulder symptoms had still not resolved and he received a subacromial corticosteroid injection in his right shoulder from Dr. Murray. Plaintiff's SMF ¶ 12; Defendant's Responsive SMF ¶ 12. At this time Dr. Murray told the plaintiff that he had a right shoulder rotator cuff impingement. *Id.* ¶ 15. The injection did not resolve the plaintiff's symptoms. *Id.* ¶ 13. As a result, surgery was performed on the plaintiff on October 14, 2003 by Dr. Murray. *Id.*

At some unknown time the plaintiff wrote:

To Whom it may Concern:

Regarding the accident in Portland on 5/25/02, I am sending you this letter to inform you of my tort claim # 040–02–0160A. I have enclosed some medical bills and expenses with this matter. I have missed work (and) time due to this injury, I have not consulted anyone at this time. I feel the missed time at work also injury has caused me grief (and) aggravation. I am currently set up for one year therapy or six months depending on how many times a week or month, between hospital visits and therapy I was advised by my physician. Therefore my bills will exceed over 4,000. If for any reason I would have to go back I will take care of it on my own. I've had four different postal workers come to my work. I just want it to end. My claim to this matter is 10,500 for current and future bills that may occur. The property damage was not my interest only my arm (and) shoulder . . . .

Defendant's SMF ¶ 22; Plaintiff's Responsive SMF ¶ 22. In response to a letter from the defendant requesting that the plaintiff initial the correct total amount requested on his claim, the plaintiff wrote: "I feel I have given proper documentation for loss of work conservatively 5,000 to 6,000 (and) physical therapy 3,000 to 3,800 (and) transportation (and) pay on every visit gas etc + + + I feel I am being reasonable to resolve this situation . . . ." *Id.* ¶ 23. The plaintiff never amended his administrative claim. *Id.* ¶ 24.

The plaintiff's medical bills total in excess of $10,000 before the post-surgery bills are added in. Plaintiff's SMF ¶ 14; Defendant's Responsive SMF ¶ 14.

### III. Discussion

Under the heading "Affirmative Defenses" the defendant's answer includes the following:

3. Pursuant to 28 U.S.C. § 2675(b), Plaintiff is prohibited from claiming or recovering an amount against the Defendant in excess of that set forth in Plaintiff's administrative claim presented to the United States Postal Service.

Answer (Docket No. 5) at 2. That statute provides:

Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

28 U.S.C. § 2675(b). The plaintiff contends that he is entitled to summary judgment on the defense because he did not know "nor is there any reason that he should have known" when he submitted the claim form on June 21, 2002 at the defendant's request that he would need surgery and ongoing physical therapy. Plaintiff's Motion for Partial Summary Judgment (Docket No. 8) at 2–3. The defendant contends that the statute must be strictly construed and that "plaintiff clearly knew [at the relevant time] that there was a distinct possibility that therapy would not cure the injury, that it would be more extensive." Defendant's Motion for Partial Summary Judgment, etc. ("Defendant's Motion") (Docket No. 11) at 3, 8.

The First Circuit addressed section 2675(b) in *Reilly v. United States*, 863 F.2d 149 (1st Cir.1988).

Because the statute itself renders the state of a claimant's knowledge (actual or constructive) at the time of presentment of the claim of decretory significance, the mechanics of a § 2675(b) inquiry must be double-barrelled: What should the party have known? When should she have known it? To be binding in this context, knowledge need not be certain. In the same vein, intelligence which serves only to bear out earlier suspicions can-

not unlock the FTCA's narrow escape hatch. Diagnoses which are no more than cumulative and confirmatory of earlier diagnoses are neither "newly discovered evidence" not "intervening facts" for the purposes of § 2675(b). We agree with the Second Circuit that the statute demands a showing that some new and previously unforeseen information came to light between the time of filing the administrative claim and the trial on damages. And, the newly-emergent datum must be material.

863 F.2d at 171 (citations and some internal quotation marks omitted). In that case, the First Circuit held that damages could not be awarded at trial in excess of the amount included in the plaintiff's notice of claim because, "[b]y the time the claim was filed, the Reillys were on notice of the global extent of Heather's injuries and disabilities." *Id.* at 172.

Here, the information available to the plaintiff by June 21, 2002 was not enough to "put [the plaintiff] on fair notice to guard against the worst-case scenario when preparing [his]claim," *id.;* less than a month after the accident, he had been told only that he had a contusion and had noticed pain and swelling. He stated that he could develop arthritis or tendonitis in the area; there has been no showing that either of these conditions necessarily requires surgery or extensive physical therapy or that the plaintiff should have known that such consequences might ensue. The remaining evidence on which the defendant relies arose after the notice of claim was filed: Dr. Crute's order of an MRI on August 30, 2002, "which led inevitably to the ultimate later surgical decision." Defendant's Motion at 8. The defendant contends that the plaintiff was required to "suggest[ ] he was surprised by his medical course of treatment" and to amend

"has administrative claim of $12,500 to permit the Postal Service to consider the now certain greater resultant injury." [3] *Id.* None of the case law cited by the government requires a claimant relying on the exceptions provided in section 2675(b) to demonstrate that he was "surprised" in order to be entitled to the exception, and there is no reason to require such a showing. The actual information available to the claimant at the relevant time and the possible inferences to be drawn from that information are the test, not how the claimant may have reacted to subsequently-provided information. The argument that a claimant is required to amend his claim, assuming *arguendo* that the claim has not yet been denied—an action that would make any amendment an empty exercise—has been rejected by the only court discussing it in a reported decision which I was able to locate in my own research. *McCormick v. United States,* 539 F.Supp. 1179, 1184 & n. 2 (D.Colo. 1982).

Neither of the two decisions of this court under the statute cited by the defendant requires a different outcome. In *Poirier v. United States,* 745 F.Supp. 23 (D.Me. 1990), this court held that a demand in the complaint for damages in the amount of $1,500,000 should not be reduced to $800,000, the sum stated in the plaintiffs' original FTCA notice of claim, where "the plaintiffs would have been hard pressed unless they were clairvoyant to foresee the resulting mental anguish, economic loss, and the reasonable probability of future surgical procedures resulting from" the defendant's surgical malpractice. *Id.* at 32. This holding is certainly consistent with my conclusion. In *Wardwell v. Unit-*

*ed States,* 764 F.Supp. 679 (D.Me.1991), this court held that a plaintiff was limited to the amount of damages stated in her FTCA notice of claim when the only reason she offered for the increased amount of damages she sought in her court action was that "the treating orthopedic surgeon did not undertake an assessment of the permanent impairment she suffered as a result of the accident until after the filing of the administrative claim." *Id.* at 684. Here, it is the nature of the injury and the necessary treatment that were not known at the time the administrative claim was filed, not merely how a known injury would affect the plaintiff in the future. *Wardwell* is distinguishable on its facts.

This court also addressed section 2675(b) in *Schubach v. United States,* 657 F.Supp. 348 (D.Me.1987). In that case, the plaintiff sought damages in excess of those specified in her administrative claim on the ground that "subsequent to the filing and denial of the claim, she consulted with counsel and learned that she was also entitled to recover for claimed lost wages and pain and suffering." *Id.* at 349 n. 3. The court held that this information was reasonably discoverable at the time the claim was presented and thus did not qualify for the statutory exception. *Id.* at 350. Here, no showing has been made that the plaintiff could reasonably have known on June 21, 2002 that he might require surgery and lengthy physical therapy. *Schubach* is also distinguishable on its facts.

■ As Magistrate Judge Collings noted in *Lowry v. United States,* 958 F.Supp. 704, 718 (D.Mass.1997), the First Circuit's opinion in *Reilly* implies "that there may

---

3. The defendant asserts in its motion that the plaintiff's administrative claim was denied on August 19, presumably in 2002. Defendant's Motion at 8. This fact is not included in either party's statement of material facts and there-

fore may not be considered in resolving the pending motions. Even if that were not the case, Dr. Crute's first mention of an MRI and referral to an orthopedist occurred 11 days later.

be complications from an injury which are sufficiently new and unforeseen and material to merit an increase in the amount sought in the administrative claim." (Emphasis in original.) The opinion in *Myers v. United States,* 805 F.Supp. 90 (D.N.H. 1992), upon which the defendant also relies, Defendant's Motion at 7, interprets *Reilly* to require a plaintiff to show that his treating physician "ruled out" at the time the administrative notice was filed the possibility of the surgery which in fact ensued, *id.* at 93. I find that interpretation of *Reilly* unduly restrictive. I find more persuasive the discussion of *Reilly* and case law from other jurisdictions set forth in *Michels v. United States,* 31 F.3d 686, 688–89 (8th Cir.1994). An injury that worsens after the administrative notice is filed in a manner that was not reasonably foreseeable when the notice was filed does come within the statutory exception.

## IV. Conclusion

The plaintiff's motion is **GRANTED** and the defendant's motion is **DENIED**.